UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:                                          )
                                                )
NAHID AHMADPOUR                                 )
                                                )       Case No. 18-11248
                                                )       Chapter 7
                                                )
_____ )

## EMERGENCY MOTION TO LIFT STAY AND FOR FEES

COMES NOW Nationwide Registry & Security, Ltd., ("NRS"), by counsel, and for its
Emergency Motion to Lift the Stay and For Fees, states as follows:

1. This matter has a long and torturous history expanding over a period of **ten (10) years**
and now **seven (7) separate bankruptcy proceedings**. The following is only a summary of
some of the various machinations in which the Debtor, Nahid Ahmadpour, and her husband,
Youri Beitdashtoo, have engaged to avoid collection of a debt of Ahmadpour that arose out of
her criminal activity.

2. On January 17, 2008, NRS obtained a judgment in the Fairfax Circuit Court (Case No.
2007-14478) against Nahid Ahmadpour, in the principal sum of $80,000 with interest thereon at
the rate of 18% per annum from October 10, 2005, until paid, and attorney's fees of $16,000.
The judgment was based upon a series of ten (10) drafts written by Ahmadpour on her Chevy
Chase Bank account between October 8, 2005 and October 10, 2005, totaling $80,000, all of
which drafts were dishonored by Chevy Chase Bank.

3. The foregoing were only a portion of the $268,150 in bad checks written by
Ahmadpour during the month of October 2005. Ahmadpour was criminally charged for her
actions, plead guilty to, "DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT
FUNDS IN DRAWEE BANK WITH INTENT TO DEFRAUD" (quoting from the Plea

Agreement signed freely and voluntarily by Ahmadpour with the advice and assistance of criminal defense counsel), and was found guilty of the crimes. A copy of the Plea Agreement is attached as **Exhibit 1.**

4. **Bankruptcy Case No. 1**: While the foregoing proceedings were pending in the Fairfax Circuit Court, Ahmadpour filed her first Chapter 7 proceeding in the Virginia Bankruptcy Court, Case No. 08-13766-BFK. Ahmadpour purposefully chose not to list NRS as a creditor in that bankruptcy filing knowing that she could not discharge the obligation as it was based upon her criminal, fraudulent behavior. However, after NRS obtained its judgment–with no knowledge of the bankruptcy filing, Ahmadpour moved to reopen Case No. 08-13766-BFK to include the debt of NRS and argue that the time for filing an objection to dischargeability had lapsed. That initial attempt to avoid collection was not successful.

5. Thereafter, NRS began efforts to collect the subject judgment. During the course of the collection proceedings, NRS discovered that Ahmadpour had transferred her solely-owned hair salon business, HEMETAF, Inc., into the name of her husband, Youri Beitdashtoo, and her solely owned home, located 4054 41st Street, McLean, Virginia, into joints names with her Husband as tenants by the entireties, both transfers being for the purpose of avoiding collection and her becoming judgment proof.

6. As a result of the foregoing findings, NRS was forced to file two additional actions in the Fairfax Circuit Court against Ahmadpour and Beitdashtoo seeking to set aside the aforesaid transfers:

> –Cir. Ct. Case No. 2009-17377 was filed on December 4, 2009; on October 18, 2010, the Circuit Court entered an Order setting aside the transfer of the stock in HEMETAF, Inc. as fraudulent in nature.
>
> –Cir. Ct. Case No. 2010-15001 was filed on October 25, 2010, and sought to set aside the transfer by Ahmadpour of her interest in the real property known as 4054–41st Street, North, McLean, Virginia (the "Property") to Beitdashtoo and herself as tenants by the entirety in a further effort to make herself judgment

proof. **THIS IS THE CASE THAT IS PRESENTLY SET FOR TRIAL IN THE FAIRFAX CIRCUIT COURT ON FEBRUARY 12, 2018, WHICH TRIAL HAS BEEN DELAYED 7 YEARS BY THE VARIOUS BANKRUPTCY FILINGS OF AHMADPOUR AND HER HUSBAND.**

7. The parties entered into a Settlement Agreement ("Agreement") dated July 27, 2011, which NRS hoped would result in the satisfaction of the judgment and negate the necessity of pursing the second action. Consistent with said Agreement, on September 16, 2011, an Order was entered in Cir. Ct. Case No. 2010-15001 removing it from the active docket with leave to reinstate in the event Ahmadpour and Beitdashtoo failed to comply with the terms of the Settlement Agreement.

8. As probably should have been anticipated given the history, no sooner had the parties entered into the Agreement did Ahmadpour and Beitdashtoo default—it being obvious that they had no intent of complying, only using the same to forestall the collection proceedings.

9. Upon that default, NRS renewed its efforts at collection, and Ahmadpour and Beitdashtoo began their serial bankruptcy filings, including the instant action.

–**Bankruptcy Case No. 2**: Ahmadpour's first Chapter 13 bankruptcy case, Case No. 11-17929, was dismissed on March 19, 2012 as a bad faith filing.

–**Bankruptcy Case No. 3**: Beitdashtoo filed a Chapter 13 bankruptcy case, Case No. 11-16702, which was converted to a Chapter 7 proceeding. On July 12, 2012, the Virginia Bankruptcy Court entered an Order modifying the automatic stay expressly providing that both the pending foreclosure and Cir. Ct. Case No. 2010-15001 could proceed.

10. Fairfax Circuit Court Case No. 2010-15001 was subsequently reinstated on the active docket of the state court and scheduled for trial on August 27, 2012.

11. **Bankruptcy Case No. 4**: In yet another effort to avoid the NRS's collection efforts, on August 16, 2012, just days before the scheduled trial, Ahmadpour filed yet another Chapter

13 bankruptcy proceeding in the Virginia Bankruptcy Court, Case No. 2012-15026, the third such filing in less than a year.   Because of her previous filing, the automatic stay was only in effect for 30 days unless extended by the court upon motion of the debtor.   Continuing with her efforts to avoid the payment of the judgment, Ahmadpour filed such a motion, but the request was denied, the Court finding that the filing was in "bad faith."   The underlying bankruptcy case was dismissed by Order entered June 6, 2013.

12.   **Bankruptcy Cases No. 5 and 6**:   As the efforts of Beitdashtoo and Ahmadpour to avoid NRS's collection efforts had failed through multiple filings in the Virginia Bankruptcy Court, in a further effort to avoid a trial in the state court, on October 31, 2012, Beitdashtoo filed yet another bankruptcy proceeding, this time in the U. S. Bankruptcy Court for the District of Columbia, Case No. 12-00722–the filing in that jurisdiction being for the express purpose of avoiding counsel for NRS knowing that counsel for NRS was not licensed in D.C., and because Beitdashtoo and Ahmadpour had met with no success in their serial filings in the Eastern District of Virginia.   Beitdashtoo used the location of his Wife's business in D.C. as the purported basis for his filing in that jurisdiction.   Beitdashtoo also filed the parties sixth (6th) bankruptcy case, also in D.C., a Chapter 7 proceeding for HEMETAF, Case No. 12-00232.

13.   As a result of the aforesaid filings, on January 22, 2013, the Fairfax Circuit Court entered an Order staying the state court action.

14.   By Order entered in Beitdashtoo's D. C. Chapter 13 case on January 16, 2013, he was denied a discharge because of the previous filings in Virginia.

15.   After Beitdashtoo's Chapter 13 case in D.C. ran its course and all stays related thereto lapsed, NRS again moved to reinstate Fairfax Circuit Court Case No. 2010-15001 on the docket.   Over vigorous objections of Ahmadpour, the Circuit Court reinstated the matter on the docket and scheduled it for trial on **February 12, 2018.**

16. Not being satisfied with that outcome, in a further attempt to avoid trial, Beitdashtoo filed what he styled as a Motion to Reopen Case No. 11-16702-BFK and for sought sanctions against NRS for violation of the Discharge Injunction pursuant to 11 U.S.C. §§ 105 and 524. **Exhibit 2.**

17. NRS was, once again, forced to defend against the dilatory tactics of Ahmadpour and her husband, filing its Opposition, which is attached as **Exhibit 3.**

18. On January 25, 2018, the Virginia Bankruptcy Court issued its opinion on the Motion, ruling in pertinent part that the Virginia state court action seeking to set aside the transfer of Ahmadpour's residence to avoid collection could proceed. A copy of that Order is attached as **Exhibit 4.**

19. In an effort to prepare for the trial, the undersigned scheduled Ahmadpour's deposition in the state court action; she failed to appear for her deposition, and NRS filed a Motion for Sanctions in the state court action; that hearing is scheduled for **Friday, February 9, 2018 at 10:00 a.m.**

20. **Bankruptcy Case No 7**: In yet another effort to avoid the trial–which Ahmadpour knows without question will result in the fraudulent transfer being set aside, Ahmadpour has now filed a seventh (7th) bankruptcy case for the sole purpose of preventing the hearing of February 9th and the trial of February 12th. Ahmadpour now is using a family member's address in Maryland as her address so that she can file an action in Maryland–once again to avoid the history of matters in Virginia and D.C. and because she knows that counsel for NRS is not admitted in Maryland. (What she did not know is that counsel has affiliated with an attorney licensed in Maryland in another collection proceeding in the Maryland Bankruptcy Court and is in a position to protect the interests of NRS).

21. The current, seventh bankruptcy filing is filed in bad faith. There has been no substantial change in the Debtor's financial or personal affairs since her multiple previous filings. NRS has previously been granted relief from the stay in multiple Chapter 7 and 13 bankruptcy proceedings against the parties. If ever good cause existed in a case for granting relief from the stay, this is the case.

22. The debt of NRS is nondischargeable as it is based upon Ahmadpour's criminal, fraudulent behavior, nor is it subject to discharge in this proceeding as she intentionally chose not to list it in her previous Chapter 7 proceedings.

23. Moreover, while acknowledging the existence of the subject real property, Ahmadpour claims it is held jointly with her Husband and thus is not property of the estate; she also contends that the subject property is exempt and thus is not an asset to the estate.

24. Ahmadpour also misrepresents that the obligation on the first trust note held by Wells Fargo is a joint obligation of her and her husband. The note is solely in her husband's name. Exhibit 5.

25. Similarly, Ahmadpour misrepresents that the second trust note held by Suntrust is a joint obligation of her and her husband. The note is solely in her husband's name. Counsel has requested a copy of the note from Suntrust and will make a copy available to the Court during any hearing in this matter.

26. For the past ten (10) years, Ahmadpour and Beitdashtoo have abused and misused the bankruptcy system in an effort to avoid a non-dischargeable debt incurred as a result of criminal activity of Ahmadpour, not in a good faith effort or to get a fresh start. It is time for that abuse to stop.

27. Yet again, NRS has been unnecessarily caused to incur attorney's fees and costs as result of another bankruptcy filing by these parties.

WHEREFORE, the Plaintiff, Nationwide Registry & Security, prays that this Court take up this matter on an emergency basis; that it lift the automatic stay so that the trial in the Fairfax Circuit Court in Case No. 2010-15001 can go forward; that NRS be awarded its attorney's fees and costs incurred herein; and for such other and further relief as to this Court seems just and proper.

**Nationwide Registry & Security, Ltd.**
*By Counsel*

**O'CONNOR & VAUGHN LLC**
Robert L. Vaughn, Jr., VSB # 20633
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
Email: rvaughn@oconnorandvaughn.com

By    /s/ Robert L. Vaughn, Jr.
        Robert L. Vaughn, Jr.
        *Counsel for NRS*

**LAW OFFICES OF LEWIS AND ASSOCIATES, PC**
6066 Leesburg Pike, Fourth Floor
Falls Church, VA 22041
(703) 912-3100

By    /s/ Fitzgerald Lewis
        Fitzgerald Lewis
        *Co-counsel for Plaintiff*

Certificate of Service

I hereby certify that on February 5, 2018, I caused the foregoing Opposition to be served on the U.S. Trustee, the Chapter 7 Trustee (if one has been appointed), and Debtor's counsel by CM/ECF. Counsel also emailed a copy of this Motion directly to Debtor's counsel.

/s/ Robert L. Vaughn, Jr.
Robert L. Vaughn, Jr.

1    **GMEM**
     DAVID ROGER
2    DISTRICT ATTORNEY
     Nevada Bar #002781
3    BRIAN J. KOCHEVAR
     Chief Deputy District Attorney
4    Nevada Bar #005691
     200 Lewis Avenue
5    Las Vegas, NV 89155-2212
     (702) 671-2500
6    Attorney for Plaintiff

FILED IN OPEN COURT
NOV 1 4 2006
SHIRLEY B. PARRAGUIRRE, CLERK
BY_____
                    DEPUTY

7                          DISTRICT COURT

8                     CLARK COUNTY, NEVADA

9    THE STATE OF NEVADA,                    )
                                             )
10                  Plaintiff,               )
                                             )   CASE NO:   C226058
11        -vs-                               )   DEPT NO:   VI
                                             )
12   NAHID AHMADPOUR,                        )
     #1997946                                )
13                                           )
                    Defendant.               )
14   _____   )

15                    GUILTY PLEA AGREEMENT

16        I hereby agree to plead guilty to: **DRAWING AND PASSING A CHECK

17   WITHOUT SUFFICIENT FUNDS IN DRAWEE BANK WITH INTENT TO

18   DEFRAUD, PRESUMPTIONS OF INTENT TO DEFRAUD (Gross Misdemeanor -

19   NRS 205.130, 205.132)**, as more fully alleged in the charging document attached hereto as

20   Exhibit "1".

21        My decision to plead guilty is based upon the plea agreement in this case which is as

22   follows:

23        Both parties agree to stipulate to five (5) years probation. Defendant agrees to pay

24   restitution in the amount of $268,150.00. If defendant pays full restitution while on

25   probation, the State will not oppose withdrawl of guilty plea and dismissal of case. Both

26   parties agree to stipulate to guilty plea in abstentia.

27   //

28   //





P:\WPDOCS\INF\609\60947203.doc

## CONSEQUENCES OF THE PLEA

I understand that by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit "1".

I understand that as a consequence of my plea of guilty I may be imprisoned in the Clark County Detention Center for a period of not more than one (1) year and that I may be fined up to $2,000.00. I understand that the law requires me to pay an Administrative Assessment Fee.

I understand that, if appropriate, I will be ordered to make restitution to the victim of the offense(s) to which I am pleading guilty and to the victim of any related offense which is being dismissed or not prosecuted pursuant to this agreement. I will also be ordered to reimburse the State of Nevada for any expenses related to my extradition, if any.

I understand that I am eligible for probation for the offense to which I am pleading guilty. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

I understand that if more than one sentence of imprisonment is imposed and I am eligible to serve the sentences concurrently, the sentencing judge has the discretion to order the sentences served concurrently or consecutively.

I also understand that information regarding charges not filed, dismissed charges, or charges to be dismissed pursuant to this agreement may be considered by the judge at sentencing.

I have not been promised or guaranteed any particular sentence by anyone. I know that my sentence is to be determined by the Court within the limits prescribed by statute.

I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

I understand that if the State of Nevada has agreed to recommend or stipulate a particular sentence or has agreed not to present argument regarding the sentence, or agreed not to oppose a particular sentence, or has agreed to disposition as a gross misdemeanor when the offense could have been treated as a felony, such agreement is contingent upon my

2

appearance in court on the initial sentencing date (and any subsequent dates if the sentencing is continued). I understand that if I fail to appear for the scheduled sentencing date or I commit a new criminal offense prior to sentencing the State of Nevada would regain the full right to argue for any lawful sentence.

I understand if the offense(s) to which I am pleading guilty to was committed while I was incarcerated on another charge or while I was on probation or parole that I am not eligible for credit for time served toward the instant offense(s).

I understand that as a consequence of my plea of guilty, if I am not a citizen of the United States, I may, in addition to other consequences provided for by federal law, be removed, deported, excluded from entry into the United States or denied naturalization.

I understand that the Division of Parole and Probation will prepare a report for the sentencing judge prior to sentencing. This report will include matters relevant to the issue of sentencing, including my criminal history. This report may contain hearsay information regarding my background and criminal history. My attorney and I will each have the opportunity to comment on the information contained in the report at the time of sentencing. Unless the District Attorney has specifically agreed otherwise, then the District Attorney may also comment on this report.

## WAIVER OF RIGHTS

By entering my plea of guilty, I understand that I am waiving and forever giving up the following rights and privileges:

1. The constitutional privilege against self-incrimination, including the right to refuse to testify at trial, in which event the prosecution would not be allowed to comment to the jury about my refusal to testify.

2. The constitutional right to a speedy and public trial by an impartial jury, free of excessive pretrial publicity prejudicial to the defense, at which trial I would be entitled to the assistance of an attorney, either appointed or retained. At trial the State would bear the burden of proving beyond a reasonable doubt each element of the offense charged.

//

3

3.  The constitutional right to confront and cross-examine any witnesses who would testify against me.

4.  The constitutional right to subpoena witnesses to testify on my behalf.

5.  The constitutional right to testify in my own defense.

6.  The right to appeal the conviction, with the assistance of an attorney, either appointed or retained, unless the appeal is based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035

## VOLUNTARINESS OF PLEA

I have discussed the elements of all of the original charge(s) against me with my attorney and I understand the nature of the charge(s) against me

I understand that the State would have to prove each element of the charge(s) against me at trial.

I have discussed with my attorney any possible defenses, defense strategies and circumstances which might be in my favor.

All of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney.

I believe that pleading guilty and accepting this plea bargain is in my best interest, and that a trial would be contrary to my best interest.

I am signing this agreement voluntarily, after consultation with my attorney, and I am not acting under duress or coercion or by virtue of any promises of leniency, except for those set forth in this agreement.

I am not now under the influence of any intoxicating liquor, a controlled substance or other drug which would in any manner impair my ability to comprehend or understand this agreement or the proceedings surrounding my entry of this plea.

4

1    My attorney has answered all my questions regarding this guilty plea agreement and

2    its consequences to my satisfaction and I am satisfied with the services provided by my

3    attorney.

4        DATED this _____ day of November, 2006.

5                                                NAHID AHMADPOUR

6                                                Defendant  Sharon L. Myles
                                                 Notary Public, District of Columbia
7                                                My Commission Expires 2-14-2010

    AGREED TO BY:
8                                                NAHID AHMADPOUR

9

10   Brian J. Kochevar                           8th      NOVEMBER  2006
     Chief Deputy District Attorney
11   Nevada Bar #005691                          My commission expires ... 2-14-2010

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

CERTIFICATE OF COUNSEL:

I, the undersigned, as the attorney for the Defendant named herein and as an officer of the court hereby certify that:

1. I have fully explained to the Defendant the allegations contained in the charge(s) to which guilty pleas are being entered.

2. I have advised the Defendant of the penalties for each charge and the restitution that the Defendant may be ordered to pay.

3. All pleas of guilty offered by the Defendant pursuant to this agreement are consistent with the facts known to me and are made with my advice to the Defendant.

4. To the best of my knowledge and belief, the Defendant:

a. Is competent and understands the charges and the consequences of pleading guilty as provided in this agreement.

b. Executed this agreement and will enter all guilty pleas pursuant hereto voluntarily.

c. Was not under the influence of intoxicating liquor, a controlled substance or other drug at the time I consulted with the defendant as certified in paragraphs 1 and 2 above.

Dated: This ___ day of ~~October~~ November, 2006.

ATTORNEY FOR DEFENDANT

rj

6

1
AINF
DAVID ROGER
2
Clark County District Attorney
Nevada Bar #002781
3
BRIAN J. KOCHEVAR
Chief Deputy District Attorney
4
Nevada Bar #005691
200 Lewis Avenue
5
Las Vegas, Nevada 89155-2212
(702) 671-2500
6
Attorney for Plaintiff

DISTRICT COURT
7
CLARK COUNTY, NEVADA
8
9

10    THE STATE OF NEVADA,
                                                    )
                    Plaintiff,                      )    Case No.    C226058
11                                                  )    Dept No.    VI
                                                    )
12                -vs-                               )
                                                    )
13    NAHID AHMADPOUR,                               )
      #1997946                                      )              AMENDED
14                                                  )
                    Defendant.                      )       INFORMATION
                                                    )
15

16    STATE OF NEVADA        )
                             )  ss:
17    COUNTY OF CLARK        )

18          DAVID ROGER, District Attorney within and for the County of Clark, State of

19    Nevada, in the name and by the authority of the State of Nevada, informs the Court:

20          That NAHID AHMADPOUR, the Defendant(s) above named, having committed the

21    crime of **DRAWING AND PASSING A CHECK WITHOUT SUFFICIENT FUNDS IN**

22    **DRAWEE BANK WITH INTENT TO DEFRAUD, PRESUMPTIONS OF INTENT**

23    **TO DEFRAUD (Gross Misdemeanor - NRS 205.130, 205.132)**, on or between October 8,

24    2005, and October 24, 2005, within the County of Clark, State of Nevada, contrary to the

25    form, force and effect of statutes in such cases made and provided, and against the peace and

26    dignity of the State of Nevada, did willfully, unlawfully, and with intent to defraud, draw

27    and pass a check to obtain cash and/or gaming chips, drawn upon Chevy Chase Bank,

28

*EXHIBIT "1"*

P:\WPDOCS\INF\60947202.DOC

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|------|-------------|-----------------|------------------|-----------|
| 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703338 |
| 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703340 |
| 10/08/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703348 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411482 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703395 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703398 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703409 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703420 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703426 |
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703427 |

P:\WPDOCS\R\F609\60947202.DOC

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|------|-------------|-----------------|------------------|-----------|
| 10/09/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $5,000.00 | 57703433 |
| 10/10/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $7,000.00 | 10076264 |
| 10/10/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10076314 |
| 10/10/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road, Las Vegas, Clark County, Nevada | $10,000.00 | 57411561 |
| 10/10/05 | 1963233921 | LAS VEGAS HILTON HOTEL AND CASINO, at 3000 Paradise Road Las Vegas, Clark County, Nevada | $10,000.00 | 57411568 |
| 10/20/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $4,000.00 | 10080446 |
| 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $5,000.00 | 10081653 |
| 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $10,000.00 | 10081666 |
| 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $20,000.00 | 10081765 |
| 10/22/05 | 1963233921 | BELLAGIO HOTEL AND CASINO, at 3600 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 10081789 |

3

| Date | Account No. | Made Payable To | In The Amount Of | Check No. |
|------|-------------|-----------------|------------------|-----------|
| 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242281 |
| 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $25,000.00 | 242324 |
| 10/24/05 | 1963215273 | ALADDIN RESORT AND CASINO, at 3667 South Las Vegas Boulevard, Las Vegas, Clark County, Nevada | $15,000.00 | 242619 |

when the said Defendant had insufficient money, property, or credit with the drawee of the

instrument to pay it in full upon its presentation.

DAVID ROGER
DISTRICT ATTORNEY
Nevada Bar #002781

BY _____

BRIAN J. KOCHEVAR
Chief Deputy District Attorney
Nevada Bar #005691

DA#06F09472X/rj
DAO EV#0605018090
D & P NSF CHECKS - F
(TK6)

4

F:\WPDOCS\NF\596\69472\02.DOC

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

In re                                        )
                                             )
Youri Beitdashtoo                            )
                                             )     Case No. 11-16702-BFK
            Debtor.                          )     Chapter 7
_____ )

## NOTICE OF MOTION TO REOPEN AND FOR SANCTIONS FOR CONTEMPT AGAINST NATIONWIDE REGISTRY & SECURITY LTD. FOR VIOLATION OF THE DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. §§ 105 AND 524

Notice is hereby given that the Debtor has filed a **MOTION TO REOPEN AND FOR SANCTIONS FOR CONTEMPT AGAINST NATIONWIDE REGISTRY & SECURITY LTD. FOR VIOLATION OF THE DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. §§ 105 AND 524 ("Motion"). Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you oppose the Motion, or if you want the Court to consider your views on the Motion, you or your attorney **must**:

> • **ON OR BEFORE December 26, 2017,** file with the Court, United States Bankruptcy Court for the Eastern District of Virginia (Alexandria Division), 200 South Washington Street, Alexandria, Virginia 22320, a written response with supporting memorandum as required by Local Bankruptcy Rule 9013-1(H). **Unless a written response and supporting memorandum are filed on or before December 26, 2017, the Court may deem any opposition waived, treat the Motion as conceded, and issue an order granting the requested relief without furt7her notice or hearing**. If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above. You must also provide a copy to the persons listed below so that these persons receive your response on or before December 26, 2017.

> • Attend the hearing scheduled to be held on **Tuesday, January 2, 2018, at 9:30 a.m.** in Courtroom I, United States Bankruptcy Court, 200 South Washington Street, Alexandria, Virginia.

> • Provide a copy of any written response to counsel for the Debtor at:

Daniel M. Press, VSB# 37123
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
Counsel for Debtor



**EXHIBIT**

2

Daniel M. Press
Chung & Press, P.C.
6718 Whittier Ave., Suite 200
McLean, VA 22101

.

If you or your attorney do not take these steps, the Court may decide that you do not oppose the Motion and may enter an order granting the Motion.

Dated: December 12, 2017.

Respectfully submitted,

__ /s/ Daniel M. Press_____ __
Daniel M. Press, VSB# 37123
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
(703) 734-3800
Counsel for Debtor

## CERTIFICATE OF SERVICE

This is to certify that on this 12th day of December, 2017, I caused the foregoing motion to be served on the U.S. Trustee, former Chapter 7 Trustee, and Robert Vaughn, counsel for Respondent, and all other persons requesting notice, by CM/ECF, and by first class mail, postage prepaid, upon:

Allyn Erlich, President
502 Park Avenue, 4th Floor
New York, NY 10022

 /s/ Daniel M. Press _____

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
YOURI BEITDASHTOO                         )
                                          )     Case No. 11-16702-BFK
                                          )     Chapter 7 (Converted Chapter 13)
                                          )
_____         )

## OPPOSITION TO MOTION TO REOPEN AND FOR SANCTIONS

COMES NOW Nationwide Registry & Security, Ltd., ("NRS"), by counsel, and for its

Opposition to the Motion to Reopen and For Sanctions, and in support of its request for fees,

states as follows:

1. This matter has a long and torturous history. The following is only a summary of

some of the various machinations that Mr. Beitdashtoo and has wife, Nahid Ahmadpour, have

engaged in to avoid a debt of Ahmadpour that arose out of her criminal activity.

2. On January 17, 2008, NRS obtained a judgment in the Fairfax Circuit Court (Case No.

2007-14478) against the Nahid Ahmadpour, in the principal sum of $80,000 with interest

thereon at the rate of 18% per annum from October 10, 2005, until paid, and attorney's fees of

$16,000. The judgment was based upon a series of ten (10) drafts written by Ahmadpour on her

Chevy Chase Bank account between October 8, 2005 and October 10, 2005, totaling $80,000, all

of which drafts were dishonored by Chevy Chase Bank.    Ahmadpour was subsequently

criminally prosecuted for her actions and plead guilty to the charges.

3. During the course of the collection proceedings, NRS discovered that Ahmadpour had

transferred her interest in her solely owned business, HEMETAF, Inc., and her solely owned real

estate, into the name of her husband, Defendant Youri Beitdashtoo, for the purpose of avoiding

collection.

**EXHIBIT 3**

4. As a result of the foregoing, NRS was forced to file an two additional actions in the

Circuit Court against Ahmadpour and Beitdashtoo seeking to set aside the aforesaid transfers:

> –Cir. Ct. Case No. 2009-17377 was filed on December 4, 2009; on October 18, 2010, the Circuit Court entered an Order setting aside the transfer of the stock in HEMETAF, Inc. as fraudulent in nature.

> –Cir. Ct. Case No. 2010-15001, the case of which Beitdashtoo currently complains, was filed on October 25, 2010, and sought to set aside the transfer by Ahmadpour of her interest in the real property known as 4054–41st Street, North, McLean, Virginia (the "Property") to Beitdashtoo and herself as tenants by the entirety in a further effort to make herself judgment proof.

5. The parties entered into a Settlement Agreement ("Agreement") dated July 27, 2011, which NRS hoped would result in the satisfaction of the judgment and negate the necessity of pursing the second action. Consistent with said Agreement, on September 16, 2011, an Order was entered in Cir. Ct. Case No. 2010-15001 removing it from the active docket with leave to reinstate in the event Ahmadpour and Beitdashtoo failed to comply with the terms of the Settlement Agreement.

6. As probably should have been anticipated given the history, Ahmadpour and Beitdashtoo defaulted on the Agreement, at which point NRS renewed its efforts at collection, including foreclosing on the Deed of Trust that had been executed to secure the payment of a portion of the judgment. It was at that time that Ahmadpour and Beitdashtoo began their serial bankruptcy filings.

7. Defendant Ahmadpour's first Chapter 13 bankruptcy case, Case No. 11-17929, was dismissed on March 19, 2012 as a bad faith filing.

8. Defendant Beitdashtoo's second filing was a Chapter 13 bankruptcy case, Case No. 11-16702, the instant action, which was converted to a Chapter 7 proceeding.

9. On July 12, 2012, this Court entered an Order modifying the automatic stay in Case No. 11-16702 expressly providing that both the pending foreclosure and Cir. Ct. Case No. 2010-15001 could proceed [Docket No. 131].

10. Cir. Ct. Case No. 2010-15001 was subsequently reinstated on the active docket of the state court and scheduled for trial on August 27, 2012.

11. In yet another effort to avoid the NRS's collection efforts, on August 16, 2012, just days before the scheduled trial, Ahmadpour filed yet another Chapter 13 bankruptcy proceeding in this Court, Case No. 2012-15026, the third such filing in less than a year.   Because of her previous filing, the automatic stay was only in effect for 30 days unless extended by the court upon motion of the debtor.   Continuing with her efforts to avoid the payment of the judgment, Ahmadpour filed such a motion, but the request was denied, this Court finding that the filing was in "bad faith."   For the Court's convenience, a copy of the Order entered on September 23, 2012 which terminated the automatic stay as to Ahmadpour [Docket No. 31] is attached hereto as **Exhibit A**. The underlying bankruptcy case was dismissed by Order entered June 6, 2013 [Docket No. 104], a copy of which is attached hereto as **Exhibit B**.

12. As the efforts of Beitdashtoo and Ahmadpour to avoid NRS's collection efforts had failed through those 3 filings, in a further effort to avoid a trial in this matter, on October 31, 2012, Beitdashtoo filed yet another bankruptcy proceedings, the fourth such filing, this time in the U. S. Bankruptcy Court for the District of Columbia, Case No. 12-00722–the filing in that jurisdiction being for the express purpose of avoiding counsel for NRS knowing that counsel for NRS was not licensed in D.C., and because Beitdashtoo and Ahmapour had meet with no success in their serial filings in the Eastern District of Virginia. Beitdashtoo used the location of his Wife's business in D.C. as the purported basis for his filing in that jurisdiction.

13. As a result of the aforesaid filing, on January 22, 2013, the Circuit Court entered an Order staying the state court action.

14. By Order entered in Beitdashtoo's D. C. Chapter 13 case on January 16, 2013, he was denied a discharge because of the previous filings in Virginia [Docket No. 35], attached hereto as **Exhibit C**.

15. Pursuant to 11 U.S.C. Section 362(c)(2)(C), to the extent any stay may have existed in the D. C. Bankruptcy case, any such stay terminated as of the date and time the case Beitdashtoo was denied a discharge

16. Beitdashtoo and Ahmadpour have used the bankruptcy system in an effort to avoid a non-dischargeable debt incurred as a result of criminal activity of Ahmadpour, not in a good faith effort or to get a fresh start. Their actions have been just the opposite, as evidenced by the words of this Court in its Order dismissing Case No. 11-17929:

> ...the Court finds that the Debtor is not proceeding with the present case in good faith, in violation of 11 U.S.C. §§ 1325(a)(3) and (a)(7). Specifically, the Court finds that, instead of using her disposable income for the purpose of repaying her creditors in a Chapter 13 plan, the Debtor has spent inordinately large sums of money at various casinos during the course of this case

17. Beitdashtoo has never been discharged from the claims made by NRS in these proceedings, or in any other bankruptcy proceeding. What he has managed to do is avoid a trial on the fraudulent conveyance claim for more than **seven (7) years** by knowingly and intentionally abusing the bankruptcy system. That abuse continues with the instant motion.

18. It is not Beitdashtoo who has suffered, but NRS who has been denied justice and caused to incur thousands of dollars in attorney's fees and costs as a result of the serial filings of Beitdashtoo and Ahmadpour.

19. There is no basis for reopening the subject case; lift stay was granted to permit the pursuit of the very state court action of which Beitdashtoo complains. If Beitdashtoo truly believed he was discharged, he would have filed this Motion in the D. C. bankruptcy court.

20. Yet again, NRS has been unnecessarily caused to incur attorney's fees and costs as result of another bankruptcy filing by Beitdashtoo, who is yet again attempting to avoid what he obviously knows is a foregone conclusion—the transfer was fraudulent and will be set aside and finally, finally, Ahmadpour will be forced to pay a judgment which is going on ten years old.

WHEREFORE, the Plaintiff, Nationwide Registry & Security, prays that the Motion to Reopen and for Sanctions be denied; that this Court reaffirm that NRS may proceed in state court with Case No. 2010-15001 against Beitdashtoo; that NRS be awarded its attorney's fees and costs incurred herein; and for such other and further relief as to this Court seems just and proper.

> **Nationwide Registry & Security, Ltd.**
> *By Counsel*

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile

By /s/ Robert L. Vaughn, Jr.
      Robert L. Vaughn, Jr., VSB # 20633
      *Counsel for NRS*

### Certificate of Service

I hereby certify that on December 22, 2017, I caused the foregoing Opposition to be served on the U.S. Trustee, the former Chapter 7 Trustee, and Debtor's counsel, Daniel M. Press, by CM/ECF.

/s/ Robert L. Vaughn, Jr.
Robert L. Vaughn, Jr.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                          )
                                                )
NAHID AHMADPOUR                                 )        Case No. 12-15026-BFK
                                                )        Chapter 13

## ORDER DENYING MOTION TO EXTEND AUTOMATIC STAY

This matter having come before this Court on September 19, 2012, upon the Debtor's

Motion to Extend Automatic Stay, and the Objection thereto of Nationwide Registry & Security,

Ltd., ("NRS"); and,

The Court hearing the evidence presented by the Debtor and the argument of counsel, for

the reasons stated on the record, which reasons are incorporated herein as though fully set forth,

finds that pursuant to 11 U.S.C. §362 (c)(3)(C), the subject bankruptcy action is presumptively

filed in bad faith which may be rebutted only by clear and convincing evidence to the contrary, but

that even if a preponderance of the evidence standard applies, the Debtor has failed to demonstrate

a substantial change in her financial or personal affairs since dismissal of her prior Chapter 13

proceeding, Case No. 11-17929-BFK, which case was dismissed by Order entered March 19, 2012,

and that the Debtor has otherwise failed to carry her burden of proof; it is

**ORDERED:**

1. The Debtor's Motion to Extend the Automatic Stay is denied.

2. The automatic stay as to Debtor Nahid Ahmadpour is no longer in effect as of
September 20, 2012.

3. The Clerk shall mail a copy of this order, or give electronic notice of its entry, to the
parties listed below.

Sep 23 2012                      /s/ Brian F. Kenney

Date: _____      _____
                                        Brian F. Kenney
                                        United States Bankruptcy Judge

Entered on Docket: September 24, 2012



EXHIBIT

A

**I ASK FOR THIS:**

**O'CONNOR & VAUGHN LLC**
11490 Commerce Park Drive, Suite 510
Reston, Virginia 20191
(703) 689-2100 Telephone
(703) 471-6496 Facsimile
By ___/s/ Robert L. Vaughn, Jr.___
    Robert L. Vaughn, Jr., VSB # 20633
    *Counsel for NRS*

**SEEN AND OBJECTED TO:**

CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
(703) 734-3800 Telephone
(703) 734-0590 Facsimile

By ___/s/ Daniel M. Press per email authority___
   Daniel M. Press, VSB # 37123
   *Counsel for Debtor*

## Local Rule 9022-1(C) Certification

    The foregoing Order was endorsed by and/or served upon all necessary parties pursuant to Local Rule 9022-1(C).

                         ___/s/ Robert L. Vaughn, Jr.___

Copies to:

Nahid Ahmadpour
4054 41st Street, North
McLean, Virginia 22101

Daniel M. Press, Esq.
CHUNG & PRESS, P.C.
6718 Whittier Avenue, Suite 200
McLean, Virginia 22101
*Counsel for Debtor*

Robert L. Vaughn, Jr., Esq.
O'CONNOR & VAUGHN LLC
11490 Commerce Park Drive, Suite 510

Reston, Virginia 20191
*Counsel for NRS*

Thomas P. Gorman, Esq.
300 N. Washington, Street, Suite 400
Alexandria, Virginia 22314
Chapter 13 Trustee

Billy B. Ruhling, II, Esq.
Troutman Sanders LLP
1660 International Drive
Suite 600
McLean, VA 22102
*Counsel for Well Fargo Bank, N.A.*

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA

_____ Alexandria _____ **Division**

In re  Nahid Ahmadpour

Case No. 12-15026-BFK

Debtor(s)                    Chapter     13

## ORDER OF DISMISSAL
## UPON DENIAL OF CONFIRMATION

On _____ May 14, 2013 _____, the Court entered an Order Denying Confirmation and providing that the debtor's case would be dismissed unless, within 21 days, the debtor(s) took action under Local Bankruptcy Rule 3015-2;

__X__ It appears that the debtor(s) has not taken such action within the time given,

_____ The debtor(s) having requested and received an extension of time within which to take action under Local Bankruptcy Rule 3015-2. It appears that the debtor(s) has not taken such action within the time given,

It is, therefore,

**ORDERED**, pursuant to Local Bankruptcy Rule 3015-2, that the above case be dismissed; and it is further

*[If appropriate]* **ORDERED** that the debtor(s) pay the balance of the filing fee in the amount of $ _____ 0.00 _____ to the Clerk of Court within 14 days of the date of this order; and it is further

**ORDERED** that dismissal of this case revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case. The trustee need not file a final report in this case unless property or money was administered.

WILLIAM C. REDDEN
Clerk of Court

Date: June 06, 2013 _____        By /s/ Elizabeth Voehl _____
                                                        Deputy Clerk

NOTICE OF JUDGMENT OR ORDER
ENTERED ON DOCKET:

June 06, 2013

**EXHIBIT**
**B**

[odisdnco ver. 12/09]

Signed: January 16 2013



SMartin Teel Jr.

S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE                                    :
YOURI BEITDASHTOO                        : Chapter 13 Case No. 12-00722
        Debtor

ORDER THAT NO DISCHARGE SHALL BE GRANTED PURSUANT TO 11 U.S.C. §1328(f)(1)

Upon consideration of the Trustee's Amended Motion objecting to the
debtor's discharge pursuant to 11 U.S.C. §1328(f)(1), and the court record
herein, and in prior case 11-16702-BFK (E.D. Va), it is,

ORDERED, that pursuant to 11 U.S.C. §1328(f)(1) the debtor shall not be
granted a discharge in this case.

cc:    Youri Beitdashtoo
       4054 41st Street N
       McLean, VA 22101

       Daniel M. Press
       6718 Whittier Avenue #200
       McLean, VA 22101

       Joseph A. Guzinski
       U.S. Trustee's Office
       115 South Union Street #210 Plaza Level
       Alexandria, VA 22314

       Cynthia A. Niklas
       Chapter 13 Trustee
       4545 42nd ST NW #211
       Washington, DC 20016-4623



EXHIBIT

C

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

In re:                                        )
                                              )
YOURI BEITDASHTOO,                            )        Case No. 11-16702-BFK
                                              )        Chapter 7
                         Debtor.              )
_____)

## ORDER GRANTING
## DEBTOR'S MOTION TO REOPEN CASE,
## GRANTING IN PART AND DENYING IN PART DEBTOR'S
## MOTION FOR SANCTIONS AND SETTING HEARING

This matter is before the Court on the Debtor's Motion to Reopen this bankruptcy case

and for sanctions against National Registry and Security, Ltd. ("NRS"). Docket No. 172. NRS

has filed an Opposition to the Debtor's Motion. Docket No. 174. The Court heard the arguments

of the parties on January 2, 2018. For the reasons stated below, the Court will grant the Debtor's

Motion to Reopen. The Court will grant in part and will deny in part the Debtor's Motion for

Sanctions and will set a hearing.

### Uncontested Facts

Although the parties disagree on many facts, the procedural history of this matter is not

genuinely disputed.

*A. NRS's Judgment Against Ms. Ahmadpour and the Transfer of the Property.*

1.      On September 11, 2005, Ms. Nahid Ahmadpour transferred her interest in 4054

41 St. N., McLean, VA 22101 ("the Property"), from herself to herself and her husband, the

Debtor, as tenants by the entirety.

1



2.      In January 2008, NRS obtained a judgment in the Circuit Court of Fairfax County
against the Debtor's wife, Ms. Ahmadpour, in the amount of $80,000.00, plus interest at 18% per
annum from October 10, 2005, until paid, and attorney's fees of $16,000.00 ("the Judgment").

3.      The Judgment arose out of certain unpaid drafts for gambling debts in Las Vegas
in October 2005. Ms. Ahmadpour pled guilty in Nevada to criminal charges related to the unpaid
drafts.

*B. NRS's Fraudulent Transfer Lawsuit and the Settlement Agreement.*

4.      On October 22, 2010, NRS filed a lawsuit against Ms. Ahmadpour and the Debtor
in the Circuit Court of Fairfax County (Case No. 2010-15001). Motion, Ex. A.

5.      The lawsuit sought to avoid the transfer as a fraudulent transfer under Va. Code §
55-80. *Id.* at 4.

6.      The lawsuit sought in the alternative a money judgment against both of the
Defendants in the amount of $80,000.00, plus interest at 18% per annum from October 10, 2005,
until paid, attorney's fees of $31,000.00, and additional attorney's fees pursuant to Va. Code §
55-82.1. *Id.*

7.      In July 2011, the parties entered into a Settlement Agreement, under which a
portion of the Judgment would be secured by a Deed of Trust against the Property.

*C. Ms. Ahmadpour's First Bankruptcy Case (No. 11-17929-BFK).*

8.      On November 1, 2011, Ms. Ahmadpour filed a Voluntary Petition under Chapter
13 with this Court. Case No. 11-17929-BFK, Docket No. 1.

2

9. After the Court denied confirmation of two plans (Docket Nos. 41 and 46), it
dismissed Ms. Ahmadpour's bankruptcy case on March 19, 2012. *Id.*, Docket No. 46.[1]

*D. Mr. Beitdashtoo's First Bankruptcy Case (No. 11-16702-BFK).*

10. Mr. Beitdashtoo, the Debtor in this case, filed a Voluntary Petition under Chapter
13 with this Court on September 13, 2011.

11. After a number of denials of confirmation and the filing of Amended Plans
(Docket Nos. 47, 72, 73, 80), the case was converted to Chapter 7 at the Debtor's request on
March 27, 2012. Docket Nos. 82, 84.

12. NRS filed a Motion to Dismiss the Chapter 7 case. Docket No. 91. The Court
denied this Motion on May 22, 2012. Docket No. 122.

13. On July 12, 2012, the Court granted relief from the automatic stay to NRS to
pursue: (a) a foreclosure on its Deed of Trust against the Property; and (b) the fraudulent transfer
lawsuit in Fairfax County (Case No. 2010-15001). Docket No. 131 ("the Relief from Stay
Order").

14. The Chapter 7 Trustee filed a Notice of Abandonment with respect to the
Property. Docket No. 148. No party in interest objected to the Trustee's Notice of Abandonment.
The Property, therefore, was deemed abandoned. *See* Bankruptcy Rule 6007 (requiring any
objection to abandonment to be filed within 14 days of a notice of abandonment).

15. The Debtor was granted a discharge under Chapter 7. Docket No. 137.

---

[1] The Court found that Ms. Ahmadpour was not proceeding in good faith because "instead of using her disposable
income for the purpose of repaying her creditors in a Chapter 13 Plan, the Debtor has spent inordinately large sums
of money at various casinos during the course of the case." Case No. 11-17929-BFK, Docket No. 46, at 1-2.

3

16.     The case was closed after approval of the Trustee's Final Report. Docket Nos.
169, 170.

*E. Ms. Ahmadpour's Second Bankruptcy Case (No. 12-15026-BFK).*

17.     On August 16, 2012, Ms. Ahmadpour filed a second Voluntary Petition under
Chapter 13 with this Court. Case No. 12-15026-BFK, Docket No. 1.

18.     Ms. Ahmadpour moved to extend the automatic stay pursuant to Bankruptcy Code
Section 362(c)(3), as her prior case was dismissed within one year of her second bankruptcy
filing. *Id.*, Docket No. 5.

19.     The Court denied Ms. Ahmadpour's Motion to Extend the Automatic Stay on
September 24, 2012. *Id.*, Docket No. 31.

20.     After denying confirmation of a series of Chapter 13 plans (Docket Nos. 50, 66,
100), the Court dismissed the case on June 6, 2013. Docket No. 104.

*F. Mr. Beitdashtoo's Second Bankruptcy Case (No. 12-00722).*

21.     After receiving his discharge from this Court, and shortly after the Court denied
Ms. Ahmadpour's Motion to Extend the Automatic Stay on September 24, 2012, the Debtor filed
a Voluntary Petition under Chapter 13 in the District of Columbia on October 31, 2012. Case No.
12-00722, Docket No. 1.

22.     The Bankruptcy Court in D.C. entered an Order stating that the Debtor was not
eligible for a discharge because he had been discharged in his Virginia case within the previous
four years, pursuant to Bankruptcy Code Section 1328(f). *Id.*, Docket No. 35.

4

23.     The Debtor obtained confirmation of a Chapter 13 plan, under which he paid
approximately $90,000.00 to NRS, thereby satisfying NRS's secured Deed of Trust claim against
the Property in full.

G. *NRS's Motion to Reinstate its Lawsuit and the Debtor's*
*Motion to Reopen and for Sanctions.*

24.     Ms. Ahmadpour continues to owe a substantial balance on the debt, owing to the
18% percent interest rate and the passage of time since the entry of the Judgment against her,
plus attorney's fees.

25.     The Debtor, Mr. Beitdashtoo, is not personally obligated on the remaining balance
of the debt.

26.     NRS filed a Motion to Reinstate the fraudulent transfer lawsuit in Fairfax County
on August 8, 2017. Motion to Reopen, Ex. B.

27.     In its Motion to Reinstate the Fairfax action, NRS did not distinguish between the
relief sought in its Complaint - avoidance of the alleged fraudulent transfer and the alternative
relief of a money judgment against both Defendants - and sought to reinstate the lawsuit on all of
its claims. *Id*. at 4.

28.     The Debtor filed an Opposition to the Motion to Reinstate in the Fairfax action,
arguing that his discharge in this case bars any further relief. *Id.* Ex. C.

29.     The Debtor also filed his Motion to Reopen and for Sanctions with this Court on
December 12, 2012. Docket No. 172.

30.     NRS filed an Objection to the Debtor's Motion to Reopen. Docket No. 174.

31.     The Court heard the arguments of the parties on January 2, 2018.

5

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2) (matters concerning the administration of the estate).

### I.    Reopening a Closed Bankruptcy Case – Section 350(b).

Bankruptcy Code Section 350(b) provides that a closed case may be reopened "to administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. § 350(b). A decision whether or not to reopen a bankruptcy case is committed to the Court's discretion. *Hawkins v. Landmark Fin. Co.,* 727 F.2d 324, 326 (4th Cir. 1984). The Court generally should avoid ruling on the underlying merits of a dispute in connection with a motion to reopen. *In re Conner,* 2014 WL 879639, at *1 (Bankr. W.D. Va. 2014); *In re Jones,* 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). The reopening of a case does not afford the parties any substantive relief; rather, reopening provides an opportunity for further relief. *Horizon Aviation of Virginia, Inc. v. Alexander (In re Alexander),* 296 B.R. 380, 382 (E.D. Va. 2003); In re Clary, 440 B.R. 122, 123 (Bankr. E.D. Va. 2010) (quoting *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962)). On the other hand, the Court should not reopen a case where no relief can be accorded to the parties and reopening would be a futile act. *In re Conner,* 2014 WL 879639, at *1; *In re Cutright,* 2012 WL 1945703, at *4 (Bankr. E.D. Va. 2012); *In re Potes,* 336 B.R. 731, 732 (Bankr. E.D. Va. 2005). If NRS's lawsuit is purely *in rem*, then its Motion to Reinstate would not violate the discharge injunction and the case should not be reopened. If, on the other hand, at least some element of NRS's lawsuit seeks an *in personam,* money judgment against the Debtor, then the case should be reopened to accord relief to the Debtor.

6

The Court finds that NRS's lawsuit is primarily *in rem* in nature and that NRS's moving

forward on the *in rem* component of its fraudulent transfer claim will not violate the discharge

injunction. Proceeding on its claim for a money judgment against the Debtor, on the other hand,

would violate the discharge injunction. The Court, therefore, will reopen the bankruptcy case to

allow the Debtor to pursue relief related to the *in personam* claim.[2]

## II.  The Nature of NRS's Fraudulent Transfer Claim.

Bankruptcy Code Sections 524(a)(1) states that a discharge operates to void any

judgment "to the extent that such judgment is a determination of the personal liability of the

debtor." 11 U.S.C. § 524(a)(1). Section 524(a)(2) further provides that a discharge operates as an

injunction against the commencement or continuation of any action "to collect, recover or offset

any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Pre-petition liens, on

the other hand, survive the discharge of a debtor, unless avoided in connection with the case. *In

re Hamlett,* 322 F.3d 342, 347 (4th Cir. 2003) ("More than a century ago, the Supreme Court

held that a bankruptcy discharge of a secured creditor's claim does not affect the status of the

creditor's underlying lien on the debtor's property.") (citing *Long v. Bullard,* 117 U.S. 617, 620-

21 (1886)); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93-94 (4th Cir. 1995). Further, it is not a

violation of the discharge injunction to pursue purely *in rem* claims against the Debtor, post-

discharge. *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Hall*, 559 B.R. 456, 460

(Bankr. W.D. Va. 2016); *In re Rountree*, 448 B.R. 389, 401 (Bankr. E.D. Va. 2011). The

---

[2]  The Debtor concedes that he has little in the way of damages other than his attorney's fees on this Motion. The
Court, therefore, will set a hearing on the Debtor's Motion, at which: (a) the Court will assess whether NRS has
respected the discharge injunction by dropping any claim for a money judgment against the Debtor in the Fairfax
action; and (b) the Court will assess an appropriate amount of attorney's fees for NRS's violation of the discharge
injunction with respect to its post-discharge request for a money judgment against the Debtor.

7

question, therefore, is whether NRS's fraudulent transfer claim, in which the Debtor is the

transferee, is in the nature of an *in rem* or an *in personam* claim.[3]

> Virginia Code Section 55-82 provides as follows:
>
> A creditor before obtaining a judgment or decree for his claim may, whether such claim
> be due and payable or not, institute any suit which he might institute after obtaining such
> judgment or decree to avoid a gift, conveyance, assignment or transfer of, or charge upon,
> the estate of his debtor declared void by either § 55-80 or 55-81; and he may in such suit
> have all the relief in respect to such estate to which he would be entitled after obtaining a
> judgment or decree for the claim which he may be entitled to recover. *A creditor availing*
> *himself of this section shall have a lien from the time of bringing his suit on all the estate,*
> *real and personal, hereinbefore mentioned, and a petitioning creditor shall be entitled to*
> *a like lien from the time of filing his petition in the court or in the clerk's office of the*
> *court in which the suit is brought.* If the proceeds of sale be insufficient to satisfy the
> claims of all the creditors whose liens were acquired at the same time they shall be
> applied ratably to such claims and the court may make a personal decree against the
> debtor for any deficiency remaining on the claim of any creditor after applying thereto his
> share of the proceeds of sale, or, if any creditor be not entitled to share in such proceeds,
> may render a personal decree against the debtor for the full amount of the creditor's
> claim. This section is subject to the provisions of §§ 8.01-268 and 8.01-269.

Va. Code § 55-82 (emphasis added).

NRS has had a Section 55-82 lien against the Property by operation of law from the time

that it brought its fraudulent transfer lawsuit in October 22, 2010. Its lien was not avoided in the

Debtor's bankruptcy case. The lien, therefore, survived the Debtor's discharge.[4]

Whether NRS's fraudulent transfer claim is an *in rem* claim or an *in personam* claim is a

matter of state law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). The Virginia Supreme Court has

---

[3] NRS argues that the Relief from Stay Order (Docket No. 131) in effect trumps the Debtor's discharge. There is no
support in the case law for that proposition. A relief from stay order only remains in effect for the duration of the
bankruptcy case, because the stay itself terminates when the case is closed or dismissed. 11 U.S.C. § 362(c)(2)(A)
and (B). On the other hand, once the case is reopened, per the Court's Order below, the Relief from Stay Order
previously entered remains in full force and effect in the reopened case. NRS, therefore, will be free to pursue its *in*
*rem* fraudulent transfer claim against the Property, but it may not proceed with its request for an *in personam,*
money judgment against the Debtor. The fourteen (14) day stay under Bankruptcy Rule 4001(a)(3) ran in July 2012.

[4] The statute does provide that "the court may make a personal decree against the debtor for any deficiency." In this
case Ms. Ahmadpour, against whom NRS already has a judgment, is the debtor under Va. Code § 55-82. Mr.
Beitdashtoo is the transferee, not the debtor, under the statute.

8

addressed the possibility of obtaining an *in personam* judgment against an alleged fraudulent transferee under Section 55-80 in two cases. First, in *Mills v. Miller Harness, Inc.,* the Court unequivocally held: "We find nothing in the statute authorizing a court to award an *in personam* judgment when a fraudulent conveyance is set aside." 326 S.E.2d 665, 667 (Va. 1985).

Later, in *Price v. Hawkins,* the Court allowed an *in personam* judgment where cash was the subject of the alleged fraudulent transfers. The Court specifically noted that "[t] his is not a situation where the property fraudulently conveyed is realty, when a declaration that the conveyance is void allows restoration of title in the name of the grantor to which the lien of the judgment could attach," nor "where the fraudulent grantor conveys personal property that requires title records for proof of ownership, like motor vehicles, and the property is still in existence and can be located for attachment or levy when the fraudulent transfer is declared void." 439 S.E.2d 382,385 (Va. 1994). In effect, the Court allowed an *in personam* judgment in *Price v. Hawkins* in order to avoid leaving the creditor with a right under Section 55-80 but no effective remedy.[5]

---

[5] One other case from the Virginia Supreme Court should be addressed here. In *Iron City Savings Bank v. Isaacson*, the Court held:

> A suit brought by a creditor to set aside a conveyance of real or tangible property, or the assignment and transfer of intangible personal property, by his debtor to a third person on the ground that it was fraudulent as to creditors is primarily a suit in personam. If the court secures jurisdiction of the person of both the grantor and grantee, it proceeds to its conclusion as essentially a suit in personam. But such a suit has this added incident. If the property (the res) conveyed or transferred is within the territorial jurisdiction of court and has been brought under the control of the court, the court, if authorized to do so by statute, may proceed to a judgment against the property as a res, even though it has not acquired such jurisdiction of the parties as is necessary for an adjudication in personam. Where, however, the court has not acquired jurisdiction of all the parties necessary to an adjudication in personam, the suit becomes in its essential nature a proceeding in rem; and the court cannot in such a case proceed unless it has acquired control of the res by actual or constructive seizure thereof, or is by law given control thereof by virtue of its location within the territorial limits to which its process may reach.

158 Va. 609, 627 (1932).

9

The Debtor relies on Judge St. John's opinion in *In re Rountree* for support. The Court, though, finds the *Rountree* opinion to be distinguishable for two reasons.

First, *Rountree* involved fraudulent transfer claims under the Uniform Fraudulent Transfer Act (UFTA) as enacted in North Carolina. Section 39-23.7 (Remedies of Creditors) of the North Carolina UFTA provides that, in addition to avoidance of the transfer, the plaintiff may obtain "[a]ny other relief the circumstances require," "[s]ubject to applicable principles of equity." N.C. Gen. St. § 39-23.7(a)(3)(c). Virginia has not enacted the UFTA and it does not appear that the UFTA, as enacted in North Carolina, would be subject to the same proscription on the entry of a personal judgment enunciated by the Virginia Supreme Court in *Mills*.

Second, Judge St. John noted that the creditor in *Rountree*, Nunnery, had "not obtained a lien, attachment, or other provisional remedy against [the] property of Rountree." *In re Rountree*, 448 B.R. at 403. In this case, as indicated above, NRS obtained a lien on the Property by virtue of Va. Code § 55-82.[6]

In the end, the Court simply cannot square the holding in *Mills* with the claim that a fraudulent transfer lawsuit constitutes an *in personam* proceeding as against the transferee. The Court holds that NRS's action in Fairfax is an *in rem* action to the extent that it seeks to avoid the transfer of the Property from Ms. Ahmadpour to herself and Mr. Beitdashtoo as tenants by the entirety as a fraudulent transfer under Va. Code § 55-80. NRS, therefore, is entitled to proceed on its *in rem* claim in state court.

---

The Court views the foregoing discussion to be clarified, if not overruled, by the decision in *Mills*. In *Mills*, there was no question that the courts had personal jurisdiction over the transferee and the Virginia Supreme Court held squarely that an *in personam* judgment was not available.

[6] Additionally, the creditor in *Rountree* (Nunnery) conceded that the North Carolina fraudulent transfer action was not an in rem claim. *Id.* at 402.

10

## III. NRS's Claim for Alternative, In Personam Relief.

NRS's Motion to Reinstate, insofar as it includes its alternative request for an *in personam,* money judgment against the Debtor, on the other hand, clearly violates the discharge injunction. 11 U.S.C. § 524(a)(2). NRS's Motion to Reinstate the case in Fairfax did not distinguish between the *in rem* relief sought with respect to the Property and the alternative request for a money judgment (no doubt because NRS was proceeding on the mistaken belief that the Relief from Stay Order somehow trumped the Debtor's discharge).

The Debtor has obtained a discharge in this case. As noted above, the Relief from Stay Order does not trump the Debtor's discharge. NRS did not seek a declaration of non-dischargeability of any amounts owed to it under the Settlement Agreement. *See* 11 U.S.C. §§ 523(a)(2)(A) (debts non-dischargeable where incurred by false pretenses, a false representation or actual fraud), (c)(1) (debts discharged unless a complaint is timely filed to determine non-dischargeability), *and* Bankruptcy Rule 4007(c) (complaints for non-dischargeability must be filed not later than 60 days after the first date set for the meeting of creditors under Section 341(a)). Any *in personam* claim has been discharged.

Finally, in 2012 the Virginia legislature enacted Va. Code § 55-82.1, which allows for an award of sanctions including attorney's fees "[u]pon a finding of fraudulent conveyance pursuant to § 55-80," against any party "who, with the intent to defraud and having knowledge of the judgment, participated in the conveyance." Va. Code § 55-82.1. It is not clear to the Court whether this statute would apply to the transfer of the Property in this case, which occurred in 2005, or to NRS's lawsuit, which was filed in 2010. The Court does find, however, that any potential liability for sanctions under Section 55-82.1 is *in personam* in nature and is barred by

11

the Debtor's discharge. On the other hand, attorney's fees to be paid solely out of the proceeds of a sale of the Property under Va. Code § 55-82.1 ("Should there be a resulting judicial sale, any award of attorney fees shall be paid out of the proceeds of the sale") are *in rem* in nature and are not barred by the Debtor's discharge.

Although NRS may proceed on its *in rem* fraudulent transfer claim, it may not proceed on its claim in the alternative for a money judgment against Mr. Beitdashtoo. The Court will set a status hearing, below, to monitor NRS's compliance with the terms of this Order.

## Conclusion

For the foregoing reasons, it is **ORDERED**:

A.  The case is reopened. No Trustee need be appointed as the relief sought is personal to the Debtor.

B.  NRS is permitted to pursue its fraudulent transfer claim against the Property, *in rem* (including any attorney's fees to be paid solely out of a sale of the Property)*,* without violating the discharge injunction.

C.  NRS is not permitted to seek a money judgment against the Debtor (including any *in personam* claim for attorney's fees or sanctions under Section 55-82.1 in the fraudulent transfer action).

D.  The Court will hold a hearing in this matter on **March 27, 2018, at 9:30 a.m.,** at which it will: (a) determine whether NRS has complied with this Order; and (b) assess an appropriate amount of attorney's fees against NRS.

12

E. Debtor's counsel shall file and serve his fee request with billing records by no

later than **March 6, 2018.** Any Objection to the fee request shall be filed by **March 20, 2018.** No

Reply Memorandum will be allowed.

F. The Clerk will mail copies of this Order, or will provide cm-ecf notice of its

entry, to the parties below.

Date: Jan 24 2018                          /s/ Brian F. Kenney

                                           Brian F. Kenney
Alexandria, Virginia                       United States Bankruptcy Judge

                      Entered on Docket:1/25/2018 sas

Copies to:

Youri Beitdashtoo
4054 41 Street, N.
McLean, VA 22101
*Chapter 7 Debtor*

Daniel M. Press
6718 Whittier Ave., Suite 200
McLean, VA 22101
*Counsel for Debtor*

Robert L. Vaughn, Jr.
11490 Commerce Park Dr., Suite 510
Reston, VA 20191
*Counsel for NRS*

13

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### CERTIFICATES OF DEPOSIT INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE

LOAN NUMBER:  0029780481          DATE   SEPTEMBER 12, 2005

BORROWER(S).  YOURI BEITDASHTOO, A MARRIED MAN

sometimes called "Borrower" and sometimes simply called "i" or "me"

PROPERTY ADDRESS.  4054   41ST   STREET  N
MC LEAN, VA  22101

1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay US $750,000.00 " " " " ", called "Principal," plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK " " " " " " " " " " " " " " ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred

2. INTEREST
(A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid I will pay interest at the yearly rate of 6.308% " " " " The interest rate I will pay may change as described in this Section 2 Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Change Dates
The interest rate I will pay may change on the 15TH day of NOVEMBER, 2005 " and on the same day every month thereafter Each date on which my interest rate could change is called an "Interest Change Date" The new rate of interest will become effective on each Interest Change Date.

(C) Interest Rate Limit
My lifetime maximum interest rate limit is 11.950%, " called "Lifetime Rate Cap"



SO253A (11 01 03/1-03) A21A          ADJUSTABLE NOTE          VA
Page 1

LENDER'S USE ONLY

EXHIBIT
5
tabbies

0029780491

#### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an "Index". The Index is the average of the last twelve calendar months' most recently published monthly yields on 3-month certificates of deposit (secondary market) as published by the Federal Reserve Board. Lender will calculate the average by adding the twelve most recently published yields together and dividing the result by twelve. Lender will round the result of this division to the nearest one-thousandth of one percentage point (0.001%) by using the following convention. If the value of the 10,000th place is five or greater, the value of the 1,000th place will round up, if the value of the 10,000th place is less than five, the 1,000th place will not change. The most recent Index figure available on each Interest Change Date is called the "Current Index" For purposes of determining the Index, "published" means first made available to the public by the Federal Reserve Board.

#### (E) Calculation of Interest Rate Changes

Lender will calculate my new interest rate by adding  3.650 "  percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

#### (F) Alternative Index

The Lender may choose an alternative index to be the Index if the Index is no longer available For purposes of this Section 2(F), the Index is not "available" if, (a) the index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note The selection of the alternative index shall be at Lender's sole discretion The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay Principal and interest by making payments every month

I will make my monthly payments on the  15TH  day of each month beginning on  NOVEMBER 15, 2005 .  I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument If, on  OCTOBER 15, 2035 "  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date "

I will make my monthly payments at  1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612 " " " " " " " " " " " " " " "  or at a different place if required by notice from the Lender

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of US  $2,588.41 . " "  This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

#### (C) Payment Change Dates

My monthly payment will change as required by Section 3(D) below beginning on the  15TH " "  day of NOVEMBER, 2006 "  and on that day every  12TH  month thereafter. Each of these dates is called a "Payment Change Date" My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below

#### (D) Calculation of Payment Changes

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment This 7-1/2% limitation is called the "Payment Cap" The Lender will peform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date

0029780491

**(E)  Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% *  * of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments

**(G)  Payment Cap Limitation, Exceptions**

Beginning with the  10TH  Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply  Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)  Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date  The Payment Change Notice will include information required by law

**4.  FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time  I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal

**5.  BORROWER'S RIGHT TO PREPAY**

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT".  WHEN I MAKE A PREPAYMENT, I WILL TELL THE LENDER IN WRITING THAT I AM DOING SO.  THE LENDER MAY REQUIRE THAT ANY PARTIAL PREPAYMENTS BE MADE ON THE DATE MY REGULARLY SCHEDULED PAYMENTS ARE DUE.  IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNT OF MY REGULARLY SCHEDULED PAYMENTS UNLESS THE LENDER AGREES TO THOSE CHANGES IN WRITING.  I MAY PAY DEFERRED INTEREST ON THIS NOTE AT ANY TIME WITHOUT CHARGE AND SUCH PAYMENT WILL NOT BE CONSIDERED A "PREPAYMENT" OF PRINCIPAL.  DURING THE FIRST 3 YEARS OF THE LOAN TERM IF I MAKE ONE OR MORE PREPAYMENTS THAT, IN THE AGGREGATE, EXCEED $5,000 IN ANY CALENDAR MONTH, I MUST PAY A PREPAYMENT CHARGE EQUAL TO 2% OF THE AMOUNT SUCH PREPAYMENTS EXCEED $5,000 IN THAT CALENDAR MONTH. AFTER THE FIRST 3 YEARS OF THE LOAN TERM, I MAY MAKE A FULL OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. * * * * *

**6.  MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Lender  The amount of the charge will be  5% *  of my overdue payment of Principal and interest  I will pay this late charge promptly but only once on each late payment

0029780491

**(B)  Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)  Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)  No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)  Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at 4054      41ST STREET  N, MC LEAN, VA  22101, * * * * * * * * * * * * * * * or at a single alternative address if I give the Lender notice of my alternative address I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that diferent address

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed Any person who takes over these obligations is also obligated to keep all of the promises made in this Note The Lender may enforce its rights under this Note against each person individually or against all of us together This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require the Lender to demand payment of amounts due "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**11.  SECURED NOTE − ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26 :

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured  Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

0029780491

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v) the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

0029780491

## SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN
CERTAIN CIRCUMSTANCES.   PLEASE CAREFULLY READ THIS ENTIRE NOTE
(INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
VOURT BEITDASHTOO

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)